UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MARILYN BEWICK,<br><br>    Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Respondent. | Case No.: 2:17-cv-00436-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Marilyn Bewick's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On August 16, 2013, Petitioner Marilyn Jewel Bewick ("Petitioner") protectively applied for Title II disability and disability insurance benefits. (AR 29.) Petitioner alleged disability beginning September 21, 2012. (*Id.*) Her claim was denied initially on January 22, 2014 and then again on reconsideration on April 28, 2014. (*Id.*) On May 14, 2014, Petitioner timely filed a written request for hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner appeared and testified at a hearing held on February 10, 2016 in Spokane, Washington. (*Id.*)

---

[1] Also pending is a filing framed as Petitioner's Motion for Summary Judgment (Dkt. 15). However, the filing does not refer to or apply the summary judgment standard. Rather, it is framed like a brief in support of Petitioner's Petition for Review, as is common in Social Security appeals such as this one. Thus, Petitioner's "motion" will be decided simultaneously as her Petition for Review, with no further reference to its status as a motion.

Impartial medical experts John R. Morse, MD and Nancy Winfrey, PhD and impartial vocational expert Jeffrey F. Tittelfitz also appeared and testified at the hearing. (*Id.*)

On March 9, 2016, ALJ Mark Kim issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from her alleged onset date through the date of the decision. (AR 38–39.) Petitioner timely requested review from the Appeals Council on April 12, 2016. (AR 171.) On August 15, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 5.)

Having exhausted her administrative remedies, Petitioner filed this case. She contends that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 2 (Dkt. 1). Petitioner argues that the ALJ failed to address her voice disorder, his findings are contradictory, he did not meet the burden of proof, and he failed to properly assign an RFC consistent with her mental impairments. *See generally* Pet'r's MSJ (Dkt. 15). Petitioner asks for reversal and a finding that she is disabled, or, in the alternative, that the case be remanded for a further hearing. Pet. for Review 2 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER – 2**

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A.  Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of September 21, 2012 through the date of the ALJ's decision.  (AR 31.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe"

when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, as of the date of his decision, Petitioner had the following severe impairments: "reactive airway disease, asthma, laryngeal inflammation, obesity, depressive disorder, post-traumatic stress disorder (PTSD), and neurocognitive disorder." (AR 31.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 32–33.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be

**MEMORANDUM DECISION AND ORDER – 5**

established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: she can stand/walk 4 hours in an 8 hour workday and sit for up to 6 hours in an 8 hour workday. She should never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can have frequent verbal communication with others. She should avoid all exposure to pulmonary irritants such as fumes, odors, dusts, gases, and chemicals or poorly ventilated areas defined as anything in excess of an office setting. She should avoid occasional exposure to temperature extremes as well as wetness and humidity. The claimant should avoid even occasional exposure to workplace hazards including moving machinery and unprotected heights. She can perform simple routine tasks in a low stress work environment defined as only occasional job related decision making. She can be around the public but should have no one-on-one interaction with the public.

(AR 33.) Based on this RFC, the ALJ further found that Petitioner was not capable of performing any of her past relevant work. (AR 37.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner's RFC is compatible with work as a "marker II," "small products assembler II," and "officer helper." (AR 38.) The ALJ further found that these jobs exist in significant numbers in the national economy. (*Id.*)

**MEMORANDUM DECISION AND ORDER – 6**

Based on the finding that Petitioner could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "was not under a disability, as defined in the Social Security Act, at any time from September 21, 2012, the alleged onset date, through the date of this decision." (AR 38.)

**B.      Analysis**

Petitioner raises four primary issues with the ALJ's decision.  First, she argues the ALJ failed to address her voice disorder.  Second, she argues the ALJ's findings are contradictory.  Third, she argues the ALJ did not meet his burden of proof at step five.  Fourth, she argues the ALJ failed to address SSR 85-16, regarding residual functional capacity for mental impairments.  *See generally* Pet'r's MSJ (Dkt. 15).  Each argument will be addressed in turn.

   **1.   The ALJ Erred by Failing to Address Petitioner's Voice Disorder.**

Petitioner asserts the ALJ erred by failing to address her alleged voice disorder, which she argues meets Listing 2.09, regarding "loss of speech due to any cause, with inability to produce by any means speech that can be heard, understood, or sustained."  20 C.F.R. Part 404 Subpart P, Appendix 1, Listing 2.09; Pet'r's MSJ 4–6 (Dkt. 15).  Applying Listing 2.09 and SSR 82-57, regarding loss of speech, Petitioner argues she meets each of three different circumstances to establish listing-level severity, although disability can be found by meeting just one.  Pet'r's MSJ 4–6 (Dkt. 15).

SSR 82-57 provides that "when an individual's impairment prevents effective speech, the loss of function is sufficiently severe so that an allowance under Listing 2.09 is justified…. To speak effectively, an individual must be able to produce speech that can be heard, understood, and sustained well enough to permit useful communication in social and vocational settings."  It breaks speech proficiency into three categories: "(1) audibility—the ability to speak at a level

**MEMORANDUM DECISION AND ORDER – 7**

sufficient to be heard; (2) intelligibility—the ability to articulate and to link the phonetic units of speech with sufficient accuracy to be understood; and (3) functional efficiency—the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time." Moreover, "[w]hen at least *one* of these attributes is missing, overall speech function is not considered effective." (Emphasis in original.) The SSR also discusses what evidence may support a finding of disability for an inability to speak effectively:

> When a refined assessment of speech proficiency is necessary, it should be made by an otolaryngologist or a speech therapist whose evaluation should be based both on personally listening to the claimant's speech and on a history of the claimant's performance in everyday living. The findings should be sufficient to provide the reviewer with a clear picture of the individual's speech capacity. Such an analysis covering the attributes of speech discussed above would include a detailed description of the following points:
> 1. The intensity of speech (audibility)—the conditions under which the individual can and cannot be heard (e.g., in quiet surroundings, noisy places, a moving automobile); the maximum distance at which individuals can be heard; whether their voices tend to become inaudible, and if so, after how long;
> 2. The ability to articulate (intelligibility)—the frequency of any difficulties with pronunciation, the extent to which the individual is asked to repeat, how well he or she is understood by strangers unaccustomed to hearing esophageal speech; and
> 3. The rate of speech and the degree of ease with which the individual's speech flows (functional efficiency)—how long he or she is able to sustain consecutive speech; the number of words spoken without interruption or hesitancy; whether he or she appears fatigued, and if so, after how long.

SSR 82-57 at *1–*2. Petitioner argues that her speech is ineffective in all three domains contemplated by SSR 82-57.

As to audibility, Petitioner argues that a diagnosis of dysphonia ("any impairment of voice; difficulty in speaking" per a medical dictionary Petitioner quotes) plus a treating provider's note that her "voice continues to sound 'gruff'" and "goes in and out" (AR. 578)[2]

---

[2] These observations were recorded by speech pathologist Lisa D'Oyley, not by Dr. Merati at AR 515 as Petitioner indicates.

**MEMORANDUM DECISION AND ORDER – 8**

suffice to prove the intensity of her speech is so limited as to qualify under the listing. Pet'r's MSJ 5 (Dkt. 15). Multiple medical records indicate a diagnosis of dysphonia (*e.g.,* AR. 558, 578), but in some cases it is unclear whether the records merely repeat a prior diagnosis as part of the patient's history or contain an independent diagnosis of dysphonia that is separate but consistent. Regardless, Petitioner's argument falls short of establishing that she meets or equals Listing 2.09 because she does not cite to record evidence that may be construed as the "refined assessment" called for by SSR 82-57. Diagnoses of dysphonia plus one provider's notes that her voice is "gruff" and "goes in and out" are a far cry from findings regarding "the conditions under which the individual can and cannot be heard (e.g., in quiet surroundings, noisy places, a moving automobile); the maximum distance at which individuals can be heard; whether their voices tend to become inaudible, and if so, after how long." SSR 82-57.

As to unintelligibility, Petitioner argues that two speech pathologists independently evaluated her as having "poor coordination of phonation response with overall severity, roughness, breathiness strain, and pitch." Pet'r's MSJ 5 (Dkt. 15); AR 564, 579. She also argues that treating provider Dr. Kuo noted evidence of "bowing vocal fords associated with breathy/high-pitched voice." Pet'r's MSJ 5 (Dkt. 15); AR 628. But Petitioner does not explain how these findings in the record satisfy the language of SSR 82-57 or otherwise prove that she meets Listing 2.09 because she cannot speak effectively. Accordingly, her argument on this point fails.

As to impaired functional efficiency, Petitioner argues that treating provider Dr. Merati stated her coughing can be instigated by talking (AR 483) and impartial medical expert Dr. Morse testified that Petitioner has "communicative limitations based on her chronic cough" and she "would have to avoid situations where she would be required to communicate either over the

phone or … in any type of competitive situation." (AR 57). Pet'r's MSJ 6 (Dkt. 15). Once again, however, Petitioner does not argue this point in terms of either the requirements of Listing 2.09 or the guidance of SSR 82-57 and therefore her Petition cannot be granted on this basis.

However, these records do fairly raise the question of whether Petitioner experiences a disabling loss of speech. Each of the medical records and opinions in the preceding paragraphs fairly contemplates at least the possibility that her speech is ineffective and that she is therefore disabled. There are multiple medical records indicating that she was treated by speech pathologists and speech therapists. (*E.g.,* AR 563, 578, 586, 628.) She also mentioned seeing a speech therapist at the ALJ hearing in this matter. (AR 64.)[3]

The ALJ, however, did not appropriately consider such a limitation. In the section of his decision considering Petitioner's impairments (AR 31–32), he includes two paragraphs regarding the severe impairments he identified and one paragraph regarding high cholesterol, the only other impairment he expressly considered but found to be non-severe. There is no mention of any impairments or potential impairments, whether severe or not, related to Petitioner's voice or speech. Although the ALJ found a severe limitation in Petitioner's "laryngeal inflammation," he did not discuss the limiting effects of this limitation either when considering whether she met or equaled a listing or when he assessed her RFC. With respect to Petitioner's RFC, the ALJ determined that she "can have frequent verbal communication with others." (AR 33.) But this finding is not explained in the decision and, given the medical evidence of record cited above, it is therefore not based on substantial evidence.

---

[3] Although it can be considered, the fact that Petitioner was able to testify at the hearing is not dispositive as to whether she suffers from a severe impairment in her speech or as to whether she is capable of sustained effective communication in a vocational setting.

**MEMORANDUM DECISION AND ORDER – 10**

The ALJ is required to consider all evidence in Petitioner's case record when deciding whether she is disabled. 20 C.F.R. § 404.1520(a)(3). To do so, he must consider the medical severity of her impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Moreover, the ALJ is required to assess "the most [Petitioner] can still do despite [her] limitations" when assessing her RFC, and he is required to consider "all the relevant evidence in [her] case record." 20 C.F.R. § 404.1545(a)(1). This duty extends to requiring the ALJ to consider all medically determinable impairments of which he is aware, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Because the ALJ made no findings whatsoever regarding the existence or severity of any speech-related limitation, despite such an issue being fairly raised both by the medical evidence of record and by the testimony of an impartial medical expert at the hearing, his findings at step two regarding Petitioner's medically determinable impairments, his findings at step three regarding whether any impairments met or equaled a listing, and the RFC he assessed prior to considering step four are all unsupported by substantial evidence. For this reason, the Petition will be granted in this case.

2. **The ALJ Erred when Assigning Petitioner's RFC.**

Petitioner next argues the ALJ erred in assigning her an RFC that is internally inconsistent because (1) it specifies she is capable of "light work" but can only stand four hours per day; and (2) she can have "frequent verbal communication with others" but "should have no one-on-one interaction with the public" (AR 33). Pet'r's MSJ 6–9 (Dkt. 15). With respect to the first alleged inconsistency, Petitioner's argument lacks merit because the RFC expressly stated that the maximum standing duration was an "additional limitation" to the finding Petitioner was capable of light work. (AR 33.) Therefore, there is no inconsistency between the allegedly incompatible limitations of "light work" and a four-hour maximum standing duration, because

the standing duration expressly modifies the light work definition as applied here. With respect to the second alleged inconsistency, the Court does not reach this issue because the case will be remanded on the basis of a lack of substantial evidence supporting the RFC finding that Petitioner is capable of "frequent verbal communication with others."

   3. **The ALJ Erred when Finding Petitioner Could Engage in Alternate Work.**

Petitioner next argues that the ALJ failed to meet his burden of proof at step five because the representative alternative jobs he identified, based on the testimony of an impartial vocational expert, each require being able to stand six hours per day, while the ALJ's RFC finding limited Petitioner to standing four hours per day. Pet'r's MSJ 9–10 (Dkt. 15). The ALJ found that a hypothetical person with Petitioner's limitations "would be able to perform the requirements of representative occupations such as marker II (DOT 920.687-126, light, SVP 2) with 169,239 jobs nationwide, small products assembler II (DOT 739.687-030, light, SVP 2) with 227,164 jobs nationwide and office helper (DOT 239.567-010, light, SVP 2) with 116,656 jobs nationwide." (AR 38.) Petitioner argues that each of these jobs require being able to stand six hours per day. Pet'r's MSJ 10 (Dkt. 15). However, the vocational expert testified at the hearing as follows:

> VE: So some positions that would meet this hypothetical would be work as a marker II… This is work that's performed at a table or bench and would allow a person to sit, stand and walk in accordance with … the hypothetical….
> Another possibility would be work of a small products assembler II…. Again, that is work that would allow a person to sit on a stool or stand at will. That's inherent to this kind of work….
> A third possibility would be work as an office helper…. Again, this is work that's performed both sitting and standing….
> ALJ: Is your testimony consistent with the DOT and/or other sources?
> VE: It is consistent with the DOT except on the standing and walking changes. That's based on my 37 years of experience in analyzing jobs and speaking with employers. Work can still be categorized … as light even when a person may need to sit according to … this hypothetical."

**MEMORANDUM DECISION AND ORDER – 12**

(AR 72.) The ALJ's finding on this factual issue is entitled to deference and will not be disturbed unless it is unsupported by substantial evidence. Because the testimony of the vocational expert supplies substantial evidence, the ALJ's finding that Petitioner could engage in alternate work will not be disturbed on the basis of an alleged inconsistency between the Dictionary of Occupational Titles and the vocational expert's testimony.

Petitioner also argues the ALJ erred by failing to credit the vocational expert's testimony that there are no jobs for a person with Petitioner's RFC who would miss four days of work per month due to physical impairments. Pet'r's MSJ 10 (Dkt. 15). However, during the hearing the ALJ posed a hypothetical involving four missed days of work per month and then separately inquired as to the maximum number of work days a person with Petitioner's RFC could miss each month and still find work. (AR 73.) The ALJ was not required to find that Petitioner herself would miss four days of work per month, and it is clear from context that he did not so find. Petitioner's argument on this point amounts to suggesting that the ALJ should have found that she would miss four days of work per month (and is therefore disabled). Such an argument asks the Court to reweigh the evidence to reach a different conclusion than the ALJ reached. This is not, by itself, sufficient to reverse the ALJ's decision.

Nonetheless, as described above, the ALJ erred in evaluating Petitioner's impairments and assigning her RFC. Accordingly, he also erred in finding that Petitioner could engage in other work, because such a finding can only be valid when the underlying RFC is itself valid.

4. **The ALJ Did Not Err by Failing to Consider Petitioner's Mental Impairments When Assigning Her RFC.**

Petitioner argues that the ALJ was required by SSR 85-16 to consider her mental impairments when assessing her RFC and that he failed to do so. Pet'r's MSJ 11 (Dkt. 15). Based on 20 C.F.R. § 404.1520a and SSR 85-16, she argues that the ALJ was obligated to

evaluate the severity of her mental impairments when determining her RFC and that he was also required to specifically consider her ability to understand, her ability to carry out and remember instructions, and her ability to respond appropriately to supervision, coworkers, and customary work pressures in a work setting. *Id.* She cites specific evidence of record that she believes establishes severe limitations for each of these factors. *Id.*

Petitioner's arguments on this point are unpersuasive. In the section of the ALJ's decision discussing Petitioner's RFC, several paragraphs are dedicated to Petitioner's mental health and alleged mental limitations. (AR 35–36.) Most relevant to Petitioner's argument here is a paragraph that reads "Nancy Winfrey, PhD, an impartial medical expert, reviewed the medical record and opined that the claimant could perform simple instructions in a low stress job with no direct interaction with the public. Great weight is given to Dr. Winfrey's opinion, as it is consistent with the record as [a] whole." (AR 36.) The Court finds that the ALJ did properly consider Petitioner's mental limitations when assigning an RFC.

Finally, Petitioner argues that the ALJ failed to address the Medical-Vocational Guidelines and that, if he had done so properly, a finding of disabled would have been necessary. Pet'r's MSJ 15 (Dkt. 15). Her argument is premised on the position that she is "limited to sedentary work." *Id.* But the ALJ did not find that she is limited to sedentary work. The ALJ expressly found that Petitioner is capable of light work, subject to additional limitations, rather than sedentary work. (AR 33.) He also found, based on the testimony of the impartial vocational expert, that such additional limitations were nonetheless consistent with performing three different jobs classified as "light work." Because Petitioner has not shown that the assessment of a light work RFC is improper or unsubstantiated (except as otherwise discussed

herein), her argument that she is disabled under the Medical-Vocational Guidelines because she is limited to sedentary work is unavailing.

## IV. CONCLUSION

Petitioner has shown that the ALJ committed reversible legal error by failing to discuss the existence, severity, or limiting effects of any impairment related to Petitioner's voice or speech. The ALJ specifically erred by failing to consider an alleged impairment fairly raised by the medical record of evidence and hearing testimony, by failing to consider whether such an impairment met or equaled a listing, and by assessing an RFC that failed to account for the limiting effects, if any, of such an impairment. Therefore, the ALJ's decision is not supported by substantial evidence and it is reversed. The Court declines to remand for an immediate award of benefits; the proper remedy is for Respondent to have an opportunity to properly consider the severity and limiting effects, if any, of any impairment in Petitioner's ability to communicate effectively.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED**, and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: March 27, 2019

_____
Honorable Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 15**